GEORGE W. FRENCH, appellant, *v.* CALVIN CARR, appellee.

## *Appeal from Kane.*

Improvements made upon lands owned by the Government are, by the various statutes upon the subject, regarded as property, and their owner has such an interest in them as would, by virtue of a decree under the Bankrupt Law of the United States, approved Aug. 19, 1841, pass to the assignee.

A Bankrupt, after having filed his petition, sold his improvements upon a tract of Government land, and subsequently brought suit to recover the amount agreed to be paid therefor. The defendant relied, for his defence, upon the fact of the bankruptcy of the plaintiff, and that the property, by operation of law, had been thereby divested out of him prior to the sale: *Held*, that the plaintiff, when he applied for his discharge under the Bankrupt Act, had an interest of a substantial, tangible and beneficial character in the improvements, which necessarily passed to his assignee, and the subsequent sale being made when his title was gone, the promise of the defendant was wholly without consideration, and the plaintiff was not entitled to recover.

ASSUMPSIT in the Kane Circuit Court, brought by the appellee against the appellant, and heard before the Hon. John D. Caton and a jury, at the April term 1844. Verdict and judgment for the plaintiff below for $550.

The facts of the case are sufficiently stated in the Opinion of the Court.

*O. Peters*, and *E. E. Harvey*, for the appellant.

If the re-sale of the claim from Carr to French was before Carr's bankruptcy, then Carr had no right of action, and the

debt thereby created passed to the assignee in bankruptcy, and the assignee only could maintain the action. Starkie's Ev. Title "*Bankruptcy*," *passim.* See Laws of Congress of 1840-41, 3d sec. of Bankrupt Law. This Act vests in the assignee, *ipso facto,* without any other assignment whatsoever, all the property and rights of property of the bankrupt.

If the re-sale was after Carr's bankruptcy, then no title passed, the same then being in the assignee by the act of bankruptcy; so that if there had been a contract of re-sale, nothing passed, and there was no consideration to support the promise.

A "claim" is such a property as may be levied upon, and consequently as would pass to the assignee. *Turney* v. *Saunders*, 4 Scam. 527. Any right in real estate is property. And if this be so, a payment of the price by French to Carr, will be no bar to a recovery of French, by the assignee, of the value of the claim of Carr. *England* v. *Clark*, Ib. 49.

If the bankrupt is not required to schedule a "claim," and if such a "claim" right does not pass by the bankruptcy to the assignee, the bankrupt may be possessed of large and valuable estates, such as will command money and sell for high prices; property on which, perhaps, the money of his creditors has been expended, and by thus investing it, he is left in control of abundance, and his creditors be cut off without a shilling. Such a result would be a reproach to our law, and a fraud upon creditors. So that no matter when the sale was, nothing passed from Carr to French, and no cause of action is shown to have existed in Carr, on which this action can be maintained.

*J. B. Thomas,* and *I. G. Wilson,* for the appellee, cited *Blair* v. *Worley,* 1 Scam. 179.

The Opinion of the Court was delivered by

KOERNER, J.* Carr, the plaintiff below, sued the appellant, French, in the Circuit Court of Kane county, in *assumpsit,* for the value of certain improvements made by him on

---

WILSON, C. J., did not sit in this case.

lands belonging to the United States, and sold to defendant. The jury found a verdict for plaintiff for $550, and defendant moved for a new trial, assigning, amongst other reasons, the general one, that the verdict was against law and evidence. The Court overruled the motion, which decision is one of the errors assigned.

The bill of exceptions discloses the following facts: That Carr had made improvements on a tract of land belonging to the Government, worth from $550 to $600, and had lived on said land; that in March, 1842, he removed from the same, and sold the improvements, or his claim, to French, who paid or secured the purchase money. French then commenced cultivating a portion of said land, but did not then move on to it; that in July following, French, finding himself involved in some difficulty regarding the true boundary line of his purchase, prevailed on Carr to take back the lot. Carr, in part payment, conveyed a house and lots in the town of Elgin to French, and there was a sort of an understanding between the parties, at the time of the re-sale to Carr, that if the difficulty regarding the boundary should be adjusted, French should have a right to re-purchase again, and that, in that case, Carr should take the house and lots in Elgin as part payment. French, at this time, took a lease from Carr for a part of the premises, for the purpose, it seems, of protecting a crop of spring wheat, which he had raised on the land, under his first purchase. In August, 1842, Carr filed his petition under the Bankrupt Act, and was declared a bankrupt by the District Court of the United States in October following, shortly after which time French moved upon the land in question, and has remained in possession ever since; Carr, about the same time, taking possession of the house and lots in Elgin, which, under the agreement made in July, Carr was to take as a part of the purchase money. French, a few days before the trial, admitted that he had re-purchased from Carr and owed him the whole claim, deducting the price for the house and lots in Elgin, and that he did not object paying because he did not owe Carr, but because he was afraid of his (Carr's) creditors, and his assignee in bankruptcy.

The evidence leaves it somewhat doubtful as to the particular time when the last sale to French was made, but as the Court had given an instruction that Carr was not entitled to recover, if the sale had not taken place before he was declared a bankrupt, the jury must have found that it was made after such declaration, which finding the facts of the case sufficiently justify.

The Court is now called upon to decide whether the verdict in favor of plaintiff is warranted by the law arising upon the facts in the case. The proper solution of the question depends upon the nature of the claim of Carr to said improvements before he sold them to French, and whether it was one of which the law takes notice, and which, by the decree of bankruptcy, passed to his assignee. By the third section of the Bankrupt Law, approved Aug. 19, 1841, it is provided, "that all the property, and rights of property, of every name and nature, and whether real, personal or mixed, of every bankrupt, except as hereinafter provided, who shall, by a decree of the proper Court, be declared to be a bankrupt within this Act, shall, by mere operation of law, *ipso facto,* from the time of such decree, be deemed to be divested out of such bankrupt, without any other act, assignment or other conveyance, and the same shall be vested by force of such decree in such assignee as shall be appointed," &c.

This language is sufficiently comprehensive to embrace the most minute and temporary interest in property, and if, on examination, it should appear that Carr had any right of property in the improvements so made by him on the public land, he has certainly lost his right of disposal over the same by being declared a bankrupt, and cannot succeed in his action. In determining this question, this Court must be guided by the legislation, which, from time to time, has been had on the subject of improvements on public land, and its former decisions, made with reference to such legislation. What the Legislature in their sovereign capacity have declared to be property, the Courts of Illinois are bound to consider as such.

By a law passed February 15, 1831, contracts made for improvements on lands owned by the Government of the

United States, were declared to be valid and binding. The
Supreme Court having decided under this law, *Hutson* v.
*Overturf*, 1 Scam. 171, that it did not apply to contracts
made after one of the parties had actually purchased the
land, and that, in such a case, a promise to pay for improve-
ments was not supported by a sufficient consideration. The
Legislature not long after enacted, that the said first law
should hereafter be construed to apply, as well to contracts
made subsequent, as to those made previous to the purchase
of public land from the U. S. Government. Laws of 1839.

By various other enactments, (see laws of 1837 and 1839,)
the possession of persons settled on unsold lands of the
United States, is recognized as furnishing sufficient title to
commence and defend actions of trespass, trespass *quare
clausum fregit*, forcible entry and detainer, and ejectment,
in all cases where the United States, or persons claiming
under them, are not parties. While this Court has repeatedly
decided, that no settler acquires a right, either to the land,
or the improvements, which he chooses to make upon it, as
against the United States and their grantees, (see case of
*Blair* v. *Worley*, 1 Scam. 179; *Cook* v. *Foster*, decided at
this term;) it has not failed to conform to the express enact-
ment of the Legislature on this subject, and has regarded
the labor of the actual settler in improving the public do-
main, and the capital expended in such a meritorious pursuit,
as being capable of forming the subject matter of a variety
of contracts and dealings between citizen and citizen.

In *Turney* v. *Saunders*, 4 Scam. 531, it was decided that
a mechanic had a lien on buildings erected by him for an
occupant of Government land, under the 17th section of the
Mechanic's Lien law, passed in 1839, which provides, that
any person who has an estate in the premises, though less
than a fee simple, shall be considered as the owner, within
the meaning of this Act. The question was there directly
decided, that improvements on public land are an estate.
The Court in that case says: "The Legislature has wisely
seen fit to pass a variety of Acts; recognizing and affecting
the interest in these possessions. The General Government
still retains the title to a great portion of the land, on which

French *v.* Carr.

are permanent improvements of great intrinsic value, and hence the necessity of passing laws adapted to property thus peculiarly situated. These improvements are treated throughout by the Legislature as the property of individuals, and as such they are subject to the control and disposition of the law, so far as the occupant is concerned, as much as if he owned the fee, except, however, that no disposition can be made of them, so as to affect in any way a title derived from the United States, in opposition to which, the estate of the occupant vanishes."

The principles laid down in that case apply with all their force to the present case. Carr, before he was declared a bankrupt, could have sold his claim, and enforced payment of the purchase money by law; he could, if in possession, have successfully defended his title against the world, except the United States, and their grantees. Under these circumstances, we cannot permit to have it said that he had no property or right of property in these improvements. In this very case, Carr, while he applied for his discharge under the Bankrupt Act, had a negotiation pending for the sale of his claim, securing to him $500·00 or $600·00. His interest, it is true, was capable of being defeated by act of Government, or by purchase from the same; but, until such defeasance, it existed, and was of a substantial, tangible and beneficial character. It necessarily passed to his assignee, and the subsequent sale to French being made when Carr's title was gone, the promise of French to pay the purchase money was wholly without consideration, and the plaintiff not entitled to recover.

It is unnecessary to examine into the other features of the case, as judgment must be reversed and a new trial granted, for the reason that the verdict was against law. Judgment is reversed at the cost of the appellee, and cause remanded and a *venire de novo* entered.* .

*Judgment reversed.*

---

*After the decision of this case, the counsel for the appellee filed a petition for a re-hearing, which was *denied.*